(No. 68146.—

2314 LINCOLN PARK WEST CONDOMINIUM ASSOCIATION, Appellee, v. MANN, GIN, EBEL & FRAZIER, LTD., *et al.* (Mann, Gin, Ebel & Frazier, Ltd., Appellant).

*Opinion filed May 23, 1990.*

Lord, Bissell & Brook, of Chicago (Maynerd I. Steinberg, Hugh C. Griffin and Nancy Shaw, of counsel), for appellant.

Herbert Beigel, Lewis S. Sandler and Stephen D. Sharp, of Beigel & Sandler, Ltd., of Chicago, for appellee.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Kevin R. Sido and Stephen D. Hurst, of counsel), for *amici curiae* Consulting Engineers Council of Illinois *et al.*

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Conservatory Condominium Association, brought the present action in the circuit court of Cook County seeking an award of damages for the cost of making certain repairs to the building in which the association members' condominium units are located. The circuit judge dismissed without prejudice all but one count

of the plaintiff's second amended complaint. The remaining count sought recovery on a negligence theory from the architectural firm responsible for the building's design, and the judge certified, for purposes of a permissive interlocutory appeal pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308), a question concerning the availability of such a cause of action. The appellate court denied the defendant's application for review of the certified question. We subsequently allowed the defendant's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The plaintiff, Conservatory Condominium Association, is an association of the owners of the 39 condominium units located at 2314 Lincoln Park West in Chicago. (The plaintiff advises us that it was erroneously identified in the initial complaint as 2314 Lincoln Park West Condominium Association.) The plaintiff brought the present action against the following parties: Conservatory Associates, a limited partnership, which had responsibility for the development, design, construction, and sale of the condominium project; Conservatory, Inc., the general partner of Conservatory Associates; First Property Management Corporation, which acted as the manager of the property after its construction; Equity Realty, Inc., which acted as the sales agent for the property, and which allegedly controlled both Conservatory, Inc., and First Property; Mayfair Construction Company, the general contractor on the project and a limited partner of Conservatory Associates; Esko & Young, Inc., the roofing contractor for the project; and Mann, Gin, Ebel & Frazier, Ltd. (Mann), the architectural firm that designed the project and certified its completion.

On a motion to dismiss, all well-pleaded facts and inferences are accepted as true. (*Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 298-99; *Acorn Auto Driving School, Inc. v. Board of Education of Leyden High School District No. 212* (1963), 27 Ill. 2d 93, 96.) Accord-

ing to the plaintiff's second amended complaint, filed February 16, 1988, construction of the property at issue was originally begun in 1973 by a developer unrelated to any of the present parties. The initial developer encountered financial problems, and construction was halted in 1975, when the project was about 65% complete. In 1979, Equity Realty, Inc., decided to acquire the property, finish the project, and sell residential units in the building as condominiums. Equity Realty then caused the formation of Conservatory Associates, Conservatory, Inc., and First Property Management Corporation to develop and manage the property. The developers subsequently entered into contracts with defendants Mayfair Construction, Mann, and Esko. Mayfair agreed to act as general contractor for the project and also became a limited partner in Conservatory Associates. Mann entered into an agreement with Conservatory Associates to serve as architect for the project, and Mann developed plans and design specifications for the work and certified the final completion of the project. Esko served as the roofing contractor on the project. Construction and development continued from 1980 to 1986, with sales of the units beginning in 1981. It appears that First Property managed the building until October 1984, when the unit owners' association assumed control pursuant to the Condominium Property Act (see Ill. Rev. Stat. 1987, ch. 30, pars. 301 through 331).

The plaintiff alleges that numerous defects in the design and construction of the project had become known to the unit owners by late 1986. According to the second amended complaint, windows and glass doors were loose, the roof leaked, the heating and cooling systems and other utilities were inadequate and did not function properly, and the garage was settling. Basing its action on both contract and tort theories, the plaintiff requested compensatory damages for the cost of repairing those

problems. The plaintiff brought claims for breach of express and implied warranties against Equity Realty, Mayfair, Conservatory Associates, and Conservatory, Inc.; for breach of express warranty against Esko; and for breach of contract against Mayfair and Mann. (The plaintiff did not assert a contract claim against First Property Management.) The plaintiff brought claims for negligence against all the defendants.

The defendants moved to dismiss the second amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). The circuit judge granted the defendants' motions with respect to the contract counts and dismissed those claims for various reasons. The judge also dismissed all but one of the plaintiff's tort counts, relying on this court's holding in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, that damages for economic loss may not be recovered in negligence. The plaintiff was granted leave to file a third amended complaint. The circuit judge refused to strike the plaintiff's negligence claim against Mann, the architectural firm, and the court issued an order on August 16, 1988, certifying the following question for purposes of a permissive interlocutory appeal under Supreme Court Rule 308:

> "Should there be an exception to the rule set forth in *Moorman* which would permit Plaintiffs seeking to recover purely economic losses due to defeated expectations of a commercial bargain to recover from an architect or engineer in tort?"

The appellate court denied Mann's application requesting leave to appeal the question certified by the circuit judge. We later allowed Mann's petition for leave to appeal to this court pursuant to Supreme Court Rule 315(a) (107 Ill. 2d R. 315(a)). *Amici curiae*, the Illinois Council of the American Institute of Architects, the Consulting Engineers Council of Illinois, the Illinois Society

of Professional Engineers, and the Illinois Architect-Engineer Council, have submitted briefs in Mann's behalf. See 107 Ill. 2d R. 345.

In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, this court held that recovery generally cannot be had in tort for what is termed purely economic loss. The plaintiff in that case had purchased a grain storage tank from the defendant manufacturer. A crack developed in the tank some years later, and the plaintiff then sued the manufacturer, seeking damages for the cost of repairing the tank and for the loss of its use. The plaintiff based its action on the tort theories of strict liability, negligence, and misrepresentation and on the contract theory of breach of express warranty.

Central to the court's discussion in *Moorman* are the appropriate characterization of economic loss and the recognition of the distinct functions served by the regimes of tort and contract. Regarding the term "economic loss," the court stated:

> " 'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***' [citation] as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' [Citation.] These definitions are consistent with the policy of warranty law to protect expectations of suitability and quality." (*Moorman*, 91 Ill. 2d at 82.)

In *Moorman*, the court concluded that the plaintiff in that case was seeking compensation for economic loss. The court held that such damages are not recoverable under the tort theories of strict liability, negligence, or innocent misrepresentation.

The court cited several considerations as militating against allowing recovery of damages for economic loss in strict liability. The court believed that the relationships between suppliers and consumers of goods are more appropriately governed by contract law than by tort law, and referred to the large statutory apparatus, such as the Uniform Commercial Code, applicable to the field of sales. The court also observed that the rules of warranty serve to limit the potentially far-reaching consequences that might otherwise result from imposing tort liability for disappointed commercial or consumer expectations; the court noted, moreover, that contracting parties are free to bargain over the terms of their warranties. *Moorman*, 91 Ill. 2d at 78-80.

In addition, the court rejected the notion that there is something arbitrary in allowing recovery in strict liability only when physical harm or personal injury results. Quoting Justice Traynor's opinion for the court in *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 18, 403 P.2d 145, 151, 45 Cal. Rptr. 17, 23, the court in *Moorman* stated:

> " 'The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the

market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.' [Citation.]" (*Moorman*, 91 Ill. 2d at 80-81.)

Thus, the rule appropriately reflects the distinction between tort and contract.

For those reasons, the court in *Moorman* declined to allow a cause of action in strict liability for the recovery of solely economic loss. (*Moorman*, 91 Ill. 2d at 81.) With respect to the plaintiff's claim for negligence, the court believed that "[t]he policy considerations against allowing recovery for solely economic loss in strict liability cases apply to negligence actions as well" (*Moorman*, 91 Ill. 2d at 88) and accordingly held that the plaintiff did not have a cause of action under that theory. Finally, the plaintiff in *Moorman* sought recovery under one additional tort theory, misrepresentation. The court noted that economic loss has been held recoverable "where one intentionally makes false representations (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282), and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations (*Rozny v. Marnul* (1969), 43 Ill. 2d 54)." (*Moorman*, 91 Ill. 2d at 88-89.) However, the court refused to allow recovery for economic loss sustained as a result of innocent misrepresentation, as was alleged there, relying on the same policy considerations that precluded recovery of those damages in strict liability and negligence. *Moorman*, 91 Ill. 2d at 89-91.

Since the *Moorman* decision, the principles expressed in that case have been applied by this court in a variety of situations related to the construction industry. In *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, the plain-

tiff homeowner—a subsequent purchaser of the residence—sued the builder under several theories, including negligence, for the cost of repairing certain defects in the house. Relying on *Moorman*, the court ruled that the homeowner could not recover in tort for solely economic losses resulting from the homebuilder's alleged negligence. (*Redarowicz*, 92 Ill. 2d at 176-78.) The court stated:

> "The plaintiff is seeking damages for the costs of replacement and repair of the defective chimney, adjoining wall and patio. While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for. The complained-of economic losses are not recoverable under a negligence theory." *Redarowicz*, 92 Ill. 2d at 178.

A similar result was reached in *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, an action brought by an association of condominium owners against the builder-developer of the property. One count of the plaintiffs' amended complaint was based in negligence and alleged the defendant's failure to construct the condominium buildings in a workmanlike manner; damages were sought for the diminished value of the property and the cost of repairing certain construction defects. The court ruled that the losses alleged were solely economic and, consistent with the decisions in *Moorman* and *Redarowicz*, upheld the dismissal of the plaintiffs' negligence count. *Foxcroft*, 96 Ill. 2d at 155-57. See also *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87 (denying recovery of punitive damages under tort theory of willful and wanton misconduct where gravamen of homeowners' action against builder-developer was for cost of repairing defects allegedly resulting from faulty workmanship).

More recently, in *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, we held that the *Moorman* rule applies even in the absence of an alternative remedy in contract. In that case the plaintiff's claim against the defendant alleged the latter's negligence in failing to properly supervise the performance of certain work. *Anderson* held that "[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." 115 Ill. 2d at 153.

The question certified in the present case is whether an exception to the *Moorman* rule should be recognized for actions alleging architectural malpractice. A similar issue was raised, but not decided, in two prior cases before this court, *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, and *Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225. The appellate court has reached conflicting results on this question. Some decisions have allowed negligence actions against architects or engineers for purely economic losses. (*People ex rel. Skinner v. FGM, Inc.* (1988), 166 Ill. App. 3d 802 (action against architect); *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290 (action against architect); see also *Wheeling Trust & Savings Bank v. Tremco Inc.* (1987), 153 Ill. App. 3d 136 (discussing *Rosos*).) Other decisions, however, have denied recovery in those circumstances. (*Tolona Pizza Products Corp. v. Davy McKee Corp.* (1989), 187 Ill. App. 3d 365 (action against professional engineering firm and individual engineer; rejecting *Rosos*); *Fence Rail Development Corp. v. Nelson & Associates, Ltd.* (1988), 174 Ill. App. 3d 94 (action against architect); *People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417 (action against architect); *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547

(action against firm providing sanitary and civil engineering services); *Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376 (action against professional engineering firm). See generally Bertschy, *Negligent Performance of Service Contracts and the Economic Loss Doctrine,* 17 J. Marshall L. Rev. 249 (1984); Friedlander, *The Impact of Moorman and Its Progeny on Construction Litigation,* 77 Ill. B.J. 654 (1989); Stein, Cottrell & Friedlander, *A Blueprint for the Duties and Liabilities of Design Professionals After Moorman,* 60 Chi.-Kent L. Rev. 163 (1984).) We note that courts of other States are also divided on this question. (See *Cooper v. Jevne* (1976), 56 Cal. App. 3d 860, 128 Cal. Rptr. 724 (allowing cause of action); *Key International Manufacturing, Inc. v. Morse/Diesel, Inc.* (1988), 142 A.D.2d 448, 536 N.Y.S.2d 792 (denying cause of action); *Lake Placid Club Attached Lodges v. Elizabethtown Builders, Inc.* (1987), 131 A.D.2d 159, 521 N.Y.S.2d 165 (denying cause of action); *Schiavone Construction Co. v. Elgood Mayo Corp.* (1981), 81 A.D.2d 221, 439 N.Y.S.2d 933, *rev'd* (1982), 56 N.Y.2d 667, 436 N.E.2d 1322, 451 N.Y.S.2d 720 (denying cause of action for reasons stated in dissenting opinion below); *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.* (1988), 236 Va. 419, 374 S.E.2d 55 (denying cause of action); *Blake Construction Co. v. Alley* (1987), 233 Va. 31, 353 S.E.2d 724 (denying cause of action).) Consistent with *Moorman* and its progeny, we answer the certified question in the negative and hold today that a tort action will not lie in the circumstances described.

The plaintiff does not deny that the recovery requested in the present action is for what we have termed economic loss. The plaintiff is seeking an award of damages for the cost of repairing defects in the property, and there is no contention that personal injury or damage to other property has resulted. Like the plaintiffs in

*Redarowicz, Foxcroft,* and *Morrow,* the plaintiff in the present case seeks compensation for the cost of repairing certain defects allegedly occurring in the construction of the condominium unit owners' residences.

The plaintiff notes that this court has not previously applied *Moorman* to an action seeking damages for professional malpractice. The plaintiff does not dispute the *Moorman* holding as such but contends that it should have no application here. The plaintiff first contends that an architect supplies information to be used by others and therefore the present claim comes within the exception recognized in *Moorman* permitting recovery of economic losses for the torts of negligent and intentional misrepresentation.

In this case, however, the plaintiff did not plead a cause of action for negligent (or intentional) misrepresentation. Moreover, while it may be the case that an architect does in fact supply information relied on by others, we do not believe that the character of that function should be overstated. Discussing the question, it has been observed:

> "Obviously, a great many businesses involve an exchange of information as well as of tangible products—manufacturers provide operating or assembly instructions, and sellers provide warranty information of various kinds. But if we ask what the product is in each of these cases, it becomes clear that the product (a building, precipitator, roofing material, computer or software) is not itself information, and that the information provided is merely incidental." (*Rankow v. First Chicago Corp.* (7th Cir. 1989), 870 F.2d 356, 364.)

In the usual case, the information supplied by the architect is transformed into the building itself.

The plaintiff also argues that recovery of economic losses is permitted in malpractice actions against other professionals and contends that no different result

should obtain here. At oral argument, plaintiff's counsel warned that application of *Moorman* to the present claim for architectural malpractice would upset settled principles of malpractice liability in other professions. Apparently the plaintiff's theory is that denial of recovery in tort for economic loss in the present case will mean that economic loss is never recoverable in an action for malpractice. In this regard, the plaintiff contends that the licensing requirements applicable to architects under the Illinois Architecture Act confirm the professional nature of the services they render. See Ill. Rev. Stat. 1987, ch. 111, pars. 1201 through 1236.

It has been suggested that the court in *Moorman* did not explicitly base its holding on the concept of duty, and that the uncertainty over the scope of the decision and its application to claims such as those for professional malpractice may be traced to the absence of that conceptual foundation. (See *Harrison v. Dean Witter Reynolds, Inc.* (N.D. Ill. 1989), 715 F. Supp. 1425, 1433; see also Bertschy, *The Economic Loss Doctrine in Illinois After Moorman*, 71 Ill. B.J. 346, 351 (1983).) We do not agree that such a foundation is lacking. It would appear that the concept of duty is at the heart of the distinction drawn by the economic loss rule.

In a variety of circumstances this court has distinguished *Moorman* and has allowed tort actions to proceed. (See *Board of Education of City of Chicago v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 439-51 (installation of asbestos-containing material in buildings tantamount to contamination of other property, making available tort recovery); *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 387-88 (tort action allowed where alleged defects in alarm system failed to detect warehouse fire; damage to property other than product itself was caused by sudden and dangerous conflagration, so tort action not barred by *Moorman*); *Vaughn v.*

*General Motors Corp.* (1984), 102 Ill. 2d 431, 436 (tort action allowed where defective brakes on truck caused truck to roll over and lose load; "The allegations of the complaint *** allege a sudden and calamitous occurrence caused by a defect in the product and state a cause of action based on strict liability").) As we have already noted, *Moorman* expressly recognized two instances—intentional misrepresentation and negligent misrepresentation—in which tort recovery may be allowed for economic loss. (*Moorman*, 91 Ill. 2d at 88-89; see also *Board of Education of City of Chicago v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 453-54.) Since *Moorman*, the appellate court has allowed recovery of economic losses in tort for intentional interference with contract and for intentional interference with prospective business advantage. (See *Werblood v. Columbia College* (1989), 180 Ill. App. 3d 967 (intentional interference with prospective economic advantage); *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547 (intentional interference with contractual relations and intentional interference with prospective economic advantage); see also *Waldinger Corp. v. CRS Group Engineers, Inc., Clark Dietz Division* (7th Cir. 1985), 775 F.2d 781 (applying Illinois law; allowing recovery of economic loss in action for intentional interference with contractual relations).) The principle common to those decisions is that the defendant owes a duty in tort to prevent precisely the type of harm, economic or not, that occurred.

Thus, the economic loss rule attempts to define the contours of duty. Describing the operation of Georgia's economic loss rule, one court has stated:

> "The rule acts as a shorthand means of determining whether a plaintiff is suing for injuries arising from the breach of a contractual duty to produce a product that conforms in terms of quality or performance to the parties['] expectations or whether the plaintiff seeks to re-

cover for injuries resulting from the breach of the duty arising independently of the contract to produce a nonhazardous product that does not pose an unreasonable risk of injury to person or property. The economic loss rule prevents recovery in tort when a defective product has resulted in the loss of the value or use of the thing sold, or the cost of repairing it. Under such circumstances, the duty breached is generally a contractual one and the plaintiff is merely suing for the benefit of his bargain. The rule does not prevent a tort action to recover for injury to other property and persons because the duty breached generally arises independent of the contract. Nor does it preclude recovery for damages to the defective product itself, where the injury resulted from an accident." *Flintkote Co. v. Dravo Corp.* (11th Cir. 1982), 678 F.2d 942, 948.

See also *East River Steamship Corp. v. Transamerica Delaval Inc.* (1986), 476 U.S. 858, 871, 90 L. Ed. 2d 865, 877, 106 S. Ct. 2295, 2302 (applying, for purposes of admiralty jurisdiction, rule barring recovery of economic loss in strict liability and negligence; "[W]e adopt an approach similar to *Seely* and hold that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself").

The gravamen of the plaintiff's claim for negligence against Mann is dissatisfaction with the way in which the building was designed and constructed, and the failure of the building to meet the unit owners' expectations. It may be noted that the unit owners received express warranties from the developer at the time they purchased their units, and the plaintiffs are currently seeking recovery from their seller on that basis. The present claim, however, is limited to the plaintiff's theory that the defendant architectural firm was negligent in its design of the structure. As our prior decisions concerning the construction industry fully illustrate, such a

claim concerns the quality, rather than the safety, of the building and thus is a matter more appropriately resolved under contract law. (See *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87; *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150; *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171.) We decline to impose on Mann a duty in tort to protect the unit owners from the sort of loss asserted. The architect's responsibility originated in its contract with the original owner, and in these circumstances its duties should be measured accordingly. Recovery of the nature requested here essentially seeks damages for a difference in quality. "There is room in the market for goods of varying quality, and if the purchaser buys goods which turn out to be below its expectations, its remedy should be against the person from whom it bought the goods, based upon the contract with that person." *Schiavone Construction Co. v. Elgood Mayo Corp.* (1981), 81 A.D.2d 221, 229, 439 N.Y.S.2d 933, 938, (Silverman, J., dissenting), *rev'd* (1982), 56 N.Y.2d 667, 436 N.E.2d 1323, 451 N.Y.S.2d 720 (for reasons stated in dissenting opinion below).

While we do not intend in the present case to determine the future application of *Moorman* in all areas of professional malpractice, we must reject the plaintiff's theory that denial of the negligence claim against the present architect would signal in general the end of malpractice recovery in tort. It may be noted that in suits involving malpractice claims against health care professionals, personal injury will generally be the alleged result, and therefore *Moorman* would not bar recovery in any event. Moreover, we believe that other professional relationships are readily distinguishable from the present case. For example, since *Moorman*, malpractice actions against attorneys have gone forward, without any suggestion that the form of recovery traditionally

recognized in such actions would no longer be allowed. (See *McLane v. Russell* (1989), 131 Ill. 2d 509; *Ogle v. Fuiten* (1984), 102 Ill. 2d 356; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13.) Moreover, those cases recognize an extracontractual duty not only to the client but also to the group of persons the client intended to benefit. Such a duty arises from a consideration of the nature of the undertaking and the lawyer's traditional responsibilities. The same cannot be said with respect to the defendant architect in the present case.

For the reasons stated, the question certified by the circuit court is answered in the negative. The cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Certified question answered;*
*cause remanded.*