FRANK MARTUSCIELLO *et al.*, Plaintiffs-Appellants, v. JDS HOMES, INC., *et al.*, Defendants (Larson Kramer and Associates, Ltd., *et al.*, Defendants-Appellees).

First District (1st Division)   No. 1—04—1495

Opinion filed September 26, 2005.—Rehearing denied November 7, 2005.

Francis J. Leyhane III and Eugene P. Sullivan, both of Leyhane & Associates, Ltd., of Chicago, for appellants.

Hinshaw & Culbertson, L.L.P., of Chicago (Laurie S. Randolph, Joshua G. Vincent, Newton C. Marshall, and Kimberly A. Jansen, of counsel), for appellees.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs, Frank and Lisa Martusciello, appeal the dismissal of their architectural malpractice action against defendants, Larson Kramer and Associates, Ltd. (LKA), and Peter S. Kramer. The thrust of plaintiffs' case is that the general rule barring economic damages for architectural services is subject to an exception established by our supreme court in *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162-64, 636 N.E.2d 503 (1994). We disagree and affirm.

Count I of plaintiffs' complaint sounded in negligence and alleged they hired Kramer, either in his individual capacity or as an agent for LKA, to design a "luxury home." JDS Homes, Inc. (JDS Homes), was hired to build the home. Plaintiffs alleged Kramer's design of their home was not sufficient in detail, leaving JDS Homes to "[fill] in the blanks." Plaintiffs alleged JDS Homes made "inappropriate or improper" decisions in filling in the blanks, resulting in defects to plaintiffs' home. The defects included window breakage, drainage problems, water leakage, crumbling balustrades, improperly sloped stairs and porch and a poorly constructed deck. Plaintiffs sought recovery for economic losses in an amount necessary to repair the defects.

Counts II through VI of plaintiffs' complaint alleged causes of action against JDS Homes and Sundek of Illinois, Inc. JDS Homes and Sundek are not parties to this appeal nor are plaintiffs' claims against them relevant.

Kramer moved to dismiss count I of plaintiffs' complaint under section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1996)). Kramer relied on the economic loss doctrine adopted by our supreme court in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 86, 435 N.E.2d 443 (1982) ("[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence," while the "remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause *** lies in contract"). The trial court agreed the economic loss doctrine barred plaintiffs' claim against Kramer and granted the motion to dismiss.

LKA moved to dismiss plaintiffs' claim against it under section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 1996)). LKA argued it was not in the business of providing architectural services for personal residences and had not been hired by plaintiffs to design their home. LKA attached an affidavit by Kramer, LKA's president, attesting to this. Plaintiffs failed to submit evidence to the contrary and the trial court granted LKA's motion. The court noted that, even if LKA had been hired by plaintiffs, their claim against it would be barred under the economic loss doctrine.

Plaintiffs moved to reconsider the trial court's dismissal of count I or, in the alternative, for leave to amend their complaint to add two additional counts. Under count VII, plaintiffs would seek economic damages under a theory of negligence on the ground that no contract existed between plaintiffs and Kramer or LKA. Count VIII, to be pled in the alternative, would allege a contract existed between plaintiffs and Kramer and/or LKA, and that Kramer, either in his individual capacity or as an agent of LKA, breached the duties implied by the contract. In support of their breach of contract theory, plaintiffs attached a letter signed by Kramer detailing architectural services to be performed and the fee for such services. Plaintiffs also attached invoices prepared by Kramer.

The trial court denied plaintiffs' motion to reconsider or for leave to amend their complaint. The court found the proposed count VII was deficient on the same ground as count I and was barred under the economic loss doctrine. The court found the proposed count VIII was insufficient as a matter of law because plaintiffs failed to attach a contract between the parties that set forth the duties alleged to have been breached.

Plaintiffs appeal under Rule 304(a) (155 Ill. 2d R. 304(a)) the dismissal of count I and the trial court's denial of their motion for leave to amend the complaint to add counts VII and VIII.

We begin by addressing plaintiffs' challenge to the trial court's dismissal of count I against Kramer under section 2—615 of the Code. Our review is *de novo*. See *Young v. Bryco Arms*, 213 Ill. 2d 433, 440, 821 N.E.2d 1078 (2004) (we review *de novo* an order granting or denying a section 2—615 motion ).

In addressing the propriety of the trial court's ruling, we must decide whether the economic loss doctrine applies to bar plaintiffs' architectural malpractice claim against Kramer. Kramer argues *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 555 N.E.2d 346 (1990), is dispositive of this issue. Plaintiffs maintain *2314 Lincoln Park* does not apply in light of *Congregation of the Passion*, 159 Ill. 2d 137, 636 N.E.2d 503.

■ The court in *2314 Lincoln Park* addressed whether economic damages can be recovered against an architectural firm under a theory of negligence. *2314 Lincoln Park*, 136 Ill. 2d at 304. The plaintiff condominium association brought an action against an architectural firm for negligent design of a condominium building. *2314 Lincoln Park*, 136 Ill. 2d at 304-06. The plaintiff sought economic damages to repair the defects to the property allegedly caused by the firm's negligent design. *2314 Lincoln Park*, 136 Ill. 2d at 305-06. The trial court certified the following question for interlocutory appeal:

> " 'Should there be an exception to the rule set forth in *Moorman* which would permit [the] [p]laintiffs seeking to recover purely economic losses due to defeated expectations of a commercial bargain to recover from an architect or engineer in tort?' " *2314 Lincoln Park*, 136 Ill. 2d at 306.

The supreme court answered the question in the negative. *2314 Lincoln Park*, 136 Ill. 2d at 312. The court held a plaintiff may not recover economic losses against an architect under a theory of negligent design. *2314 Lincoln Park*, 136 Ill. 2d at 316. "[S]uch a claim concerns the quality, rather than the safety, of the building and thus is a matter more appropriately resolved under contract law." *2314 Lincoln Park*, 136 Ill. 2d at 316-17.

Plaintiffs argue *Congregation of the Passion* limits the holding in *2314 Lincoln Park* to cases where a contract existed between the defendant architect and the plaintiff client. That case concerned whether the economic loss doctrine applied to bar recovery of economic loss due to negligent accounting practices. *Congregation of the Passion*, 159 Ill. 2d at 157. The court noted that *2314 Lincoln Park* does not stand for the proposition that all recovery for malpractice in tort is barred under the economic loss doctrine. *Congregation of the Passion*, 159 Ill. 2d at 161-62.

''The evolution of the economic loss doctrine shows that the

doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion*, 159 Ill. 2d at 162.

The court found that an accountant makes certain decisions independent of his client based on the accountant's knowledge and expertise. *Congregation of the Passion*, 159 Ill. 2d at 162-63. "This knowledge and expertise cannot be memorialized in contract terms, but are expected independent of the accountant's contractual obligations." *Congregation of the Passion*, 159 Ill. 2d at 163. The court analogized the accountant-client relationship to an attorney-client relationship, which had been excepted from the economic loss doctrine in *Collins v. Reynard*, 154 Ill. 2d 48, 607 N.E.2d 1185 (1992). *Congregation of the Passion*, 159 Ill. 2d at 162-63. "In both cases, the ultimate result of the relationship between the professional and client is something intangible." *Congregation of the Passion*, 159 Ill. 2d at 163. The court distinguished professional relationships that produce tangible services, such as an architect-client relationship. *Congregation of the Passion*, 159 Ill. 2d at 163.

"In contrast to the relationship between an attorney or accountant and their client, the relationship between an architect and his client produces something tangible, such as a plan that results in a structure. The characteristics of a tangible object are readily ascertainable, and they can be memorialized in a contract and studied by the parties. The characteristics of something intangible, however, are much more amorphous than the characteristics of something tangible. It is not necessary or generally possible to memorialize all the elements of 'competent representation' in a contract. What is necessary to competently represent a client will normally vary with different situations and cannot be anticipated before performance begins." *Congregation of the Passion*, 159 Ill. 2d at 163-64.

The court held an accountant has a duty of professional competence that exists independent of contractual obligations and economic loss resulting from a breach of that duty can be recovered under tort law. *Congregation of the Passion*, 159 Ill. 2d at 164.

Plaintiffs maintain *Congregation of the Passion* "reinterpreted *[2314] Lincoln Park* to apply *only* where a contract exists between the architects and the plaintiff-clients." (Emphasis in original.) We disagree. The court defined an exception to the economic loss doctrine that would allow recovery in tort of economic loss caused by breach of a professional duty that, because of its intangible nature, cannot be

measured in contract terms. *Congregation of the Passion*, 159 Ill. 2d at 162-64. The court did not, as plaintiffs contend, create an exception to the economic loss doctrine that would allow recovery of economic loss under tort law where a service was provided in the absence of a contract. Notably, a contract existed between the accountant and the plaintiff in *Congregation of the Passion*. *Congregation of the Passion*, 159 Ill. 2d at 142. But liability attached independent of the contract. The point is that, in the case of an accountant-client or attorney-client relationship which produces intangible services, contract law is insufficient because the "elements" of the relationship cannot be readily "memorialized" in a contract. *Congregation of the Passion*, 159 Ill. 2d at 163-64. As the court explained, such is not the case in an architect-client relationship where the service produces a tangible result, such as a blueprint or plan that results in a structure. *Congregation of the Passion*, 159 Ill. 2d at 163.

■ Plaintiffs here could have specified the level of detail to be incorporated into the design of their home. But they chose not to do so. That plaintiffs cannot recover under a breach of contract theory does not change the result. See *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 153, 503 N.E.2d 246 (1986) ("[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract"). The trial court properly dismissed plaintiffs' claim against Kramer as barred under the economic loss doctrine.

We next consider whether the trial court correctly dismissed plaintiffs' claim with respect to LKA. Our review is *de novo*. *Schusse v. Pace Suburban Bus Division of the Regional Transportation Authority*, 334 Ill. App. 3d 960, 963, 779 N.E.2d 259 (2002) (order granting or denying motion to dismiss under section 2—619 of the Code is reviewed *de novo*).

The trial court dismissed plaintiffs' claim against LKA on the ground that plaintiffs did not rebut Kramer's affidavit that LKA was not hired to design plaintiffs' home. We need not address the propriety of the court's finding in light of our holding that plaintiffs' claim against Kramer is barred under the economic loss doctrine. Even assuming plaintiffs hired LKA, their claim against it would be barred on the same ground. We affirm the dismissal of count I in its entirety. See *Schusse*, 334 Ill. App. 3d at 964 (we may affirm a section 2—619 dismissal on any grounds supported by the record, regardless of the trial court's reasons).

■ We now address whether the trial court erred in denying plaintiffs' motion for leave to amend their complaint to add counts VII

and VIII. The trial court's decision will not be reversed absent an abuse of discretion. See *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 355, 781 N.E.2d 1072 (2002). The factors relevant to deciding whether the trial court abused its discretion include: (1) whether the proposed amendment would cure a defect in the pleadings; (2) whether the proposed amendment would prejudice or surprise other parties; (3) whether the proposed amendment is timely; and (4) whether there were previous opportunities to amend the pleading. *Clemons*, 202 Ill. 2d at 355-56. "Leave to amend should generally be granted unless it is apparent that even after amendment no cause of action can be stated." *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 71, 660 N.E.2d 875 (1995).

Plaintiffs' proposed count VII was identical to their count I except that it alleged no contract existed between the parties. Plaintiffs rely on the argument that, under *Congregation of the Passion*, they are not barred from seeking economic damages against defendants in the absence of a contract between the parties. As noted above, we disagree with plaintiffs' reading of *Congregation of the Passion*. Plaintiffs cannot recover for defendants' alleged architectural malpractice under the economic loss doctrine irrespective of the existence of a contract. Count VII does not state a viable cause of action against defendants.

Plaintiffs' proposed count VIII, pled in the alternative, alleged breach of contract. Plaintiffs attached four documents to support their claim. The first document is a letter addressed to plaintiffs and signed by Kramer. The letter reads:
"I propose to perform the following [a]rchitectural [s]ervices.
A. Initial Site Visit
B. Meetings as required for programming
C. Conceptual and Preliminary Drawings
D. Working Drawings
My fee for the above services shall be $12,500.00
Not included in the above services:
1. Specifications
2. Field Observation of Construction Additional Services (1&2) if desired will be performed and billed at $75/hr."
The letter also included a payment schedule whereby plaintiffs would pay $1,250 on acceptance of the proposal, $5,000 on completion of the preliminary drawing and the remaining $6,250 on completion of the working drawing. Plaintiffs attached invoices showing they paid $6,250 to Kramer. Plaintiffs maintained "[i]f anything could be called a 'contract' between [the parties], the [letter] is it."

■ "In stating a claim for breach of contract, only a duty imposed by the terms of the contract can give rise to the breach." *Martin v. State Farm Mutual Automobile Insurance Co.*, 348 Ill. App. 3d 846,

853, 808 N.E.2d 47 (2004). The plaintiff must allege, among other things, the definite and certain terms of the parties' agreement. *Romanek v. Connelly*, 324 Ill. App. 3d 393, 404, 753 N.E.2d 1062 (2001). Plaintiffs here have failed to allege facts sufficient to support their claim. Plaintiffs alleged defendants' failure to provide a more detailed design amounted to an implied breach of the contract created by the letter. But, significantly, the letter does not require that defendants provide a detailed plan. To the contrary, the letter expressly states that specifications are not included in the services. Count VIII fails to state a claim for breach of contract against either defendant. The trial court did not abuse its discretion in denying plaintiffs' motion for leave to amend the complaint.

The judgment of the circuit court is affirmed.

Affirmed.

BURKE and McBRIDE, JJ, concur.