SECOND DIVISION
March 20, 2007

No. 1-06-1064

| | | |
|---|---|---|
| F.H. PASCHEN/S.N. NIELSEN, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| BURNHAM STATION, L.L.C., JAMES D. | ) | |
| LETCHINGER, JDL DEVELOPMENT | ) | Honorable |
| CORPORATION, COHEN FINANCIAL | ) | Stuart E. Palmer, |
| CORPORATION, TIGERMAN MCCURRY | ) | Judge Presiding. |
| ARCHITECTS and CROWN CONSTRUCTION | ) | |
| COMPANY, | ) | |
| Defendants-Appellees. | ) | |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises out of two orders of the circuit court of Cook County, one of which granted defendant Tigerman McCurry Architects' motion for summary judgment as to counts VI and VII of the second amended complaint and one of which denied plaintiff F.H. Paschen/S.N. Nielsen, Inc.'s (FHP/SNN) motion to strike an affidavit that was filed in support thereof.

The Burnham Station, L.L.C. (Burnham) is an Illinois limited liability company that was formed on September 18, 1997, by James Letchinger and JDL Development to acquire and develop certain real estate located at 15th and Clark Streets in Chicago, Illinois, for the design, construction, and sale of condominiums and town homes. Plaintiff, FHP/SNN, was an investor of Burnham Station and executed a subscription agreement to purchase six membership interests

in Burnham for $600,000. JDL managed Burnham Station, and Letchinger is its president. Defendant Tigerman McCurry Architects (TMA) is an Illinois architectural firm that drew up the architectural and design drawings, plans and specifications of all of the underground and aboveground structures at the Burnham Station project, and Stanley Tigerman is its president. The project did not go as planned, and plaintiff eventually lost its $600,000 investment. Plaintiff demanded the return of its investment monies, but such demand was refused by JDL, Letchinger, and Burnham.

On March 20, 2002, plaintiff filed a seven-count complaint against Burnham, James D. Letchinger, JDL Development, Cohen Financial Corporation, TMA, and Crown Construction Company. Plaintiff raised the following claims: a statutory breach of good faith and fair dealing against Letchinger, JDL, and Burnham; a common law breach of fiduciary duties against Letchinger, JDL, and Burnham; a request for an accounting as to Letchinger, JDL, and Burnham; fraud and fraudulent concealment against Letchinger, JDL, and Burnham; and fraud and a scheme to defraud as to Letchinger, Cohen, JDL, and Burnham.

The remaining two counts, VI and VII, which are the subjects of this appeal, relate solely to defendant TMA. Specifically, count VI alleges a claim for derivative breach of contract in that TMA failed to provide adequate drawings, plans, and specifications for the development of the Burnham project, and count VII alleges derivative professional negligence in that as a direct result of the breach, plaintiff suffered "losses of many millions of dollars," which caused "costly delays, extra costs, the permanent loss of substantial and valuable parking and of a substantial number of valuable dwelling units and other improvements to the development as well as many

other costly damages."

TMA filed a motion for summary judgment, alleging that plaintiff lacked standing to sue derivatively on behalf of Burnham because the contract at the center of the controversy was entered into solely between TMA and JDL, not Burnham, and TMA never consented to an assignment of its contract. TMA also maintained in its motion that neither plaintiff nor Burnham was an intended third-party beneficiary of the contract. In support of this argument, TMA submitted the affidavit of its president, Stanley Tigerman, who averred that TMA was retained by JDL, and he on behalf of TMA never consented to an assignment of the contract to any parties. As to count VII, TMA argued that it violated the economic loss doctrine.

In its response to the motion for summary judgment, plaintiff moved to strike paragraphs two, three, and four of Tigerman's affidavit on the grounds that the statements were conclusory and not facts that would be admissible at trial. Plaintiff further argued as to count VI that it had established sufficient material facts demonstrating that the agreement was entered into between TMA and Burnham whereas TMA had provided insufficient factual support for its contention that the contract was between TMA and JDL. As to count VII, plaintiff argued that the economic loss doctrine did not apply since it was seeking damages sustained to the project as a result of TMA's negligent acts in designing the plans for the project and not the costs to repair the defects caused by the defective plans.

On March 13, 2006, the trial court ruled that Tigerman's affidavit was not conclusory but was based upon personal knowledge. The court noted that plaintiff failed to produce a written contract or an assignment of the contract between TMA and Burnham, while TMA had presented

1-06-1064

facts showing that all of the invoices were always sent from Tigerman to JDL, and a contractual relationship between those two companies preexisted the formation of the Burnham Station development. In summarizing its ruling, the court stated:

> "I find that there's no issue of material fact that precludes summary judgment, and I find that the plaintiff does not have standing to sue TMA, as no contract relationship existed between them. Summary judgment is allowed or granted with regard to Count 6.
>
> As to Count 7, I find that the professional negligence claim in Count 7 violated the Economic Loss Doctrine. And I agree that 2314 Lincoln Park West Condominium Association is on point with regard to this matter, and summary judgment is granted with regard to Count 7."

The court further found there was no just reason to delay enforcement or appeal of the order pursuant to Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)).

Plaintiff has raised the following issues for our review: (1) whether the trial court erred in failing to strike the affidavit of Stanley Tigerman; and (2) whether the trial court erred in granting the motion for summary judgment as to counts VI and VII of the second amended complaint.

Initially, plaintiff argues the court erred in denying its motion to strike the affidavit of Stanley Tigerman. In that affidavit, Stanley Tigerman avers:

> "1. At all times relevant herein, I have been the president of Tigerman McCurry Architects, Let. ('TMA').

1-06-1064

  2. TMA was retained by JDL Development Corporation to provide professional services for the development of the Burnham Station project.

  3. TMA did not consent to an assignment of its contract with JDL to any Parties.

  4. TMA was not aware of the identity of any of the investors in the LLC and, in fact, did not even know of the creation of the LLC."

Supreme Court Rule 191 provides in pertinent part:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; *** *shall not consist of conclusions but of facts admissible in evidence*; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (Emphasis added.) 145 Ill. 2d R. 191.

"If, from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied." Kugler v. Southmark Realty Partners III, 309 Ill. App. 3d 790, 795 (1999). "[A]ffidavits offered in support of or in opposition to a motion for

summary judgment that merely set forth legal conclusions or opinions without stating supporting facts are insufficient and must be stricken." Steiner Electric Co. v. NuLine Technologies, Inc., 364 Ill. App. 3d 876, 881 (2006). Furthermore, courts must accept an affidavit as true if it is uncontradicted by counteraffidavits or other evidentiary materials. Lindahl v. City of Des Plaines, 210 Ill. App. 3d 281, 299 (1991). Whether to grant a motion to strike an affidavit submitted in support of a summary judgment motion is a question within the sound discretion of the circuit court. Kugler, 309 Ill. App. 3d at 795.

In his affidavit, Stanley Tigerman certified under oath that he is the president of Tigerman McCurry Architects. A reasonable inference can be drawn that as president, he would have personal knowledge of his company's transactions, including with whom it contracts. Tigerman's statements that his company was retained by JDL, that TMA never consented to an assignment of the contract to any parties, and he was unaware of the identity of any of the investors in the Burnham project or of the creation of Burnham in no way constituted opinions or legal conclusions. Rather, those simple declaratory statements were facts based upon his personal knowledge. Furthermore, at trial he could competently testify to these same facts which would be admissible into evidence. Contrary to plaintiff's argument, we find these averments are but simple statements of facts and, therefore, comport with Supreme Court Rule 191.

Plaintiff notes that the affidavit failed to provide any facts surrounding the formation of the agreement between TMA and JDL, such as the actual contract, the date it was entered into, the specific parties who made it, the agreed-upon price, or the services to be rendered. However,

while we agree more specificity could have been provided, there was sufficient information in the affidavit nonetheless to establish its essential purpose, which was to inform the court that the contract was solely between TMA and JDL. And as the trial court noted in its decision, plaintiff never introduced a counteraffidavit or presented evidentiary facts indicating that the contract was between Burnham and TMA. Inasmuch as Stanley Tigerman's affidavit was uncontradicted, the court was required to accept it as true. See Lindahl, 210 Ill. App. 3d at 299. Therefore, we find no abuse of discretion in the denial of plaintiff's motion to strike Stanley Tigerman's affidavit.

Plaintiff further contends that despite the Tigerman affidavit, there is sufficient evidence in the record to create a factual dispute, thereby precluding entry of summary judgment.

Our standard of review of an order granting summary judgment is *de novo*. Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill. 2d 107, 113 (1995). We must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and construe them strictly against the movant. Espinoza, 165 Ill. 2d at 113. Summary judgment is properly granted where the pleadings, depositions, admissions, affidavits and exhibits on file, when viewed in the light most favorable to the nonmoving party, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Petrovich v. Share Health Plan of Illinois, Inc., 188 Ill. 2d 17, 30-31 (1999). Although summary judgment has been called a "drastic measure," it is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " Morris v. Margulis, 197 Ill. 2d 28, 35 (2001), quoting Purtill v. Hess, 111 Ill. 2d 229, 240 (1986). Accordingly, the party moving for summary judgment must show, as a matter of law, that it is entitled to judgment.

1-06-1064

Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis, 229 Ill. App. 3d 680 (1992).

Plaintiff suggests that a factual dispute is established by the record. For example, in the confidential private placement memorandum, a document that was sent by JDL to all of the investors in the Burnham project, including plaintiff, it states that the "company," *i.e.*, Burnham Station, L.L.C., has "engaged the architectural firm of Tigerman McCurry Architects to design the project." Furthermore, in Letchinger's deposition, he initially testified that as far as he knew, Burnham hired all of the architects to perform the services. However, later in his deposition he testified unequivocally that the agreement to design the project for Burnham was between TMA and JDL, and that all of the invoices for payment of the services rendered to the Burnham project were sent to JDL in its capacity as Burnham's manager but were paid by Burnham. He also testified that all of the lien waivers were signed by TMA in exchange for payment for the work which was performed on the Burnham project in favor of Burnham Station, L.L.C.

Defendant argues that evidence of the formation of the contract between it and JDL came from the deposition testimony of Stanley Tigerman who testified that he became involved in the Burnham project when he was hired by James Letchinger:

"Q. And when you said that Jim Letchinger hired you, was it Jim Letchinger or was it the entity –

A. Letchinger.

\*\*\*

Q. But Letchinger, was he personally the one who hired

- 8 -

you, and when you say hired you, did he hire you personally or did he hire the Tigerman firm?

A. He hired the Tigerman firm.

Q. Were there any discussions either at that time or thereafter that you were *** to provide whatever services were being retained by Mr. Letchinger?

A. No.

Q. And was it Mr. Letchinger that hired you, or was it some other entity or person?

A. He did.

Q. So it wasn't JDL that hired you?

A. I don't recall that JDL existed.

Q. And it wasn't Burnham Station, LLC that hired you, is that correct?

A. No."

Although plaintiff refers to evidence in the record that Tigerman sent all of its invoices to JDL as manager of the Burnham project, and that those invoices were paid by Burnham, it has failed to produce direct evidence refuting Tigerman's affidavit and Letchinger's and Tigerman's deposition testimonies that TMA was retained by JDL rather than by Burnham. Both Tigerman and Letchinger explained in their depositions that because JDL was the manager of the Burnham project, and inasmuch as the contract or agreement was entered into between TMA and JDL, it

was the established practice of TMA to send all of its invoices to JDL, which were ultimately paid by Burnham. Plaintiff was required to produce some evidentiary facts tending to demonstrate that the contract was, in fact, entered into between TMA and Burnham but failed to do so. The trial court noted that plaintiff did not produce evidence showing when the alleged contract between Burnham and TMA was entered into, the names of the specific individuals who represented the respective entities, or the particulars of the agreement. The only evidence presented by TMA established that JDL conducted these types of business transactions on behalf of Burnham because it was the development manager, and one of its duties as manager was to receive and forward all invoices to Burnham for payment. The trial court reasoned that this practice of TMA sending its invoices to JDL developed because they were the only two contracting parties, while the ultimate responsibility for payment of those invoices was that of Burnham. Furthermore, as the trial court noted, the evidence established that a contractual relationship between JDL and TMA preexisted the formation of Burnham Station, L.L.C, a very strong indication that Burnham was not a party to the contract.

In order to defeat defendant's summary judgment motion, plaintiff was required to present some evidence sufficient to raise a genuine issue of material fact and failed to do so. TMA, on the other hand, produced sufficient evidence that the agreement was between TMA and JDL, thereby establishing that plaintiff lacks standing to sue derivatively on behalf of Burnham on a contract to which the latter was not a party. .

Plaintiff further failed to refute Tigerman's averment that there was no assignment of this contract to a third party. " 'Where the personal qualities of either party are material to a contract,

the contract is not assignable without the assent of both parties.' " United States Fidelity & Guaranty Co. v. Old Orchard Plaza Ltd. Partnership, 333 Ill. App. 3d 727, 739 (2002), quoting Martin v. City of O'Fallon, 283 Ill. App. 3d 830, 834 (1996). Inasmuch as plaintiff never produced a single witness or document demonstrating that Burnham was the contracting party for the Burnham project, it could not prevail at trial; therefore, summary judgment was appropriate. While we recognize the factual showing necessary to defeat a motion for summary judgment may be small, it must be more than exists in this case. See Taruc v. State Farm Mutual Automobile Insurance Co., 218 Ill. App. 3d 51, 60 (1991).

Plaintiff further argues that the court erred in finding that Burnham LLC was not a third party beneficiary of the TMA agreement.

In order to determine whether another is a third-party beneficiary, courts look to the contract to determine the intent of the parties. Ball Corp. v. Bohlin Building Corp., 187 Ill. App. 3d 175, 177 (1989). "Only third parties who are direct beneficiaries have rights under a contract." 155 Harbor Drive Condominium Ass'n v. Harbor Point Inc., 209 Ill. App. 3d 631, 646 (1991). "It is not enough that the third party will only reap incidental benefits from the contract." 155 Harbor Drive Condominium, 209 Ill. App. 3d at 646. " 'The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract.' " 155 Harbor Drive Condominium, 209 Ill. App. 3d at 646, quoting Wheeling Trust & Savings Bank v. Tremco, Inc., 153 Ill. App. 3d 136, 140 (1987). "A third party is a direct beneficiary when the contracting parties have manifested an intent to confer a benefit upon the third party." 155 Harbor Drive Condominium, 209 Ill. App. 3d at 646. Whether a party is a third-party

beneficiary is determined on a case-by-case basis. <u>Ardon Electric Co. v. Winterset Construction, Inc.</u>, 354 Ill. App. 3d 28, 37 (2004). Courts require an express provision because the contract's provisions apply to only them and not to third parties. <u>155 Harbor Drive Condominium.</u>, 209 Ill. App. 3d at 647. " 'In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration.' " <u>155 Harbor Drive Condominium</u>, 209 Ill. App. 3d at 647, quoting <u>Ball Corp.</u>, 187 Ill. App. 3d at 177.

Here, plaintiff had the burden of proving that defendant intended to confer a direct benefit upon Burnham or plaintiff. However, it failed to identify any words in the oral agreement which would constitute a express declaration to overcome the presumption that TMA and JDL contracted only for themselves. Although JDL was the development manager for the Burnham project, the record is devoid of evidence that either plaintiff or Burnham was the intended third-party beneficiary under this contract. Therefore, because plaintiff failed to produce any evidence that it was a third-party beneficiary under this contract, summary judgment was appropriate.

Next we address whether the trial court erred in granting summary judgment as to count VII (professional negligence) of plaintiff's second amended complaint.

In count VII, plaintiff alleges that Tigerman, as Burnham's architect, owed Burnham a duty to perform its architectural services with due care, due diligence and competence with the architectural standards then prevailing in the architectural community, that it breached that duty, and that as a result of that breach Burnham suffered "losses of many millions of dollars" resulting in "costly delays, extra costs, the permanent loss of substantial and valuable parking and of a substantial number of valuable dwelling units and other improvements to the development as well

as many other costly damages."

In addressing the propriety of the trial court's ruling, we must decide whether the economic loss doctrine applies to bar plaintiff's professional negligence claim against Tigerman.

The economic loss doctrine was adopted by our supreme court in Moorman Manufacturing Co. v. National Tank Co., 91 Ill. 2d 69, 86 (1982). The supreme court explained in that case that, "Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence," while the "remedy for economic loss, loss relating to a purchaser's disappointed expectations *** lies in contract."

Thereafter, in 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd., 136 Ill. 2d 302 (1990), our supreme court addressed whether economic damages can be recovered against an architectural firm under a theory of negligence. The plaintiff condominium association brought an action against an architectural firm for negligent design of a condominium building and sought economic damages to repair the defects to the property allegedly caused by the firm's negligent design. 2314 Lincoln Park, 136 Ill. 2d at 305-06. The trial court certified the following question for interlocutory appeal:

" 'Should there be an exception to the rule set forth in

Moorman which would permit [the] [p]laintiffs seeking to recover

purely economic losses due to defeated expectations of a

commercial bargain to recover from an architect or engineer

in tort?' " 2314 Lincoln Park, 136 Ill. 2d at 306.

The supreme court answered the question in the negative. 2314 Lincoln Park, 136 Ill. 2d at 312.

- 13 -

The court held that a plaintiff may not recover economic losses against an architect under a theory of negligent design. 2314 Lincoln Park, 136 Ill. 2d at 315. "[S]uch a claim concerns the quality, rather than the safety, of the building and thus is a matter more appropriately resolved under contract law." 2314 Lincoln Park. 136 Ill. 2d at 316-17.

In the instant case, count VII of plaintiff's second amended complaint alleges that plaintiff sustained a loss due to TMA's breach of contract which resulted in "costly delays, extra costs, the permanent loss of substantial and valuable parking and of a substantial number of valuable dwelling units and other improvements to the development as well as many other costly damages." Similarly, in 2314 Lincoln Park, the complaint alleged numerous defects in the design and construction of the project, including loose windows and glass doors, a leaky roof, inadequate heating and cooling systems, among other things. 2314 Lincoln Park, 136 Ill. 2d at 305. We discern no functional difference between the allegations in the 2314 Lincoln Park complaint and those in the instant case, both of which fall squarely within Moorman. Therefore, we find the trial court properly granted the defendant's motion for summary judgment as to count VII.

For the foregoing reasons, we find that the orders which granted defendant's motion for summary judgment as to counts VI and VII of the second amended complaint and denied plaintiff's motion to strike the affidavit of Stanley Tigerman were proper and affirm the judgment of the circuit court.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

- 14 -

1-06-1064

WOLFSON, P.J., and HALL, J., concur.