ALFRED KLASS, Plaintiff-Appellee and Cross-Appellant, v. WINSTEIN, KAVENSKY, WALLACE AND DOUGHTY *et al.*, Defendants-Appellants and Cross-Appellees.

Third District   No. 3—90—0473

Opinion filed July 16, 1991.—Modified on denial of rehearing October 1, 1991.

D. Kendall Griffith, of Hinshaw & Culbertson, of Chicago, and David E. Jones, of Thomas & Hinshaw, Culbertson, of Peoria (Bruce L. Carmen, of counsel), for appellants.

Vonachen, Lawless, Trager & Slevin, of Peoria (John A. Slevin, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

The plaintiff, Alfred Klass, sued the defendants, Stewart Winstein and the law firm of Winstein, Kavensky, Wallace & Doughty. According to the plaintiff, he advanced funds to one of his closely held corporations and in return sought to become a secured creditor. The plaintiff employed the defendants to prepare and file the necessary documents. When the corporation ultimately filed bankruptcy, the plaintiff was not treated as a secured creditor. The defendants admit they failed to properly prepare and file the necessary security agreements, but claim that their negligence did not injure the plaintiff. According to the defendants, a Federal bankruptcy court would not have treated the plaintiff as a secured creditor even if the necessary documents had been properly prepared and filed.

Following a bench trial, the court held that a bankruptcy court would have treated only part of the plaintiff's claim as secured. The court entered judgment against the defendants in the amount of $142,991.45. The defendants appeal. They reassert their belief that the plaintiff suffered no injury as a result of their negligence. The plaintiff cross-appeals. He claims the trial court miscalculated the award of damages by erroneously finding that Al Klass had been paid $84,500 of accrued salary as a preferential transfer. We affirm the trial court's award of damages as modified herein.

Klass was the longtime owner of several hotels and restaurants in the Quad Cities area. He also owned a wholesale food distribution business. The wholesale corporation, Little Alfie's, Inc., hereinafter referred to as LA, would distribute meat and other supplies to three restaurants which were each closely held corporations of Klass. From time to time, Klass advanced money to LA. On January 26, 1983, LA executed a note payable to Klass for $306,706 reflecting the current indebtedness LA owed Klass. At the same time, LA executed a blanket security agreement and a mortgage which were intended to have transferred security interests to Klass in all of LA's assets. Klass employed the defendants to prepare these documents. The defendants

negligently prepared the documents and, as a result, the plaintiff did not obtain the secured status he sought.

In December of 1984, Meatland Industries and other parties who had sold LA large amounts of inventory on credit filed an involuntary bankruptcy petition in the United States Bankruptcy Court for the Northern District. Meatland took this action because it felt LA was purchasing large amounts of inventory in anticipation of bankruptcy. LA was adjudicated bankrupt, and the case was transferred to the Central District Bankruptcy Court on January 28, 1985. LA ultimately filed for voluntary bankruptcy in the Central District of Illinois.

Klass claimed in the bankruptcy proceedings that he individually had a security interest in LA's real estate, vehicles, equipment, inventory and accounts receivable. Also, Klass claimed LA possessed a security interest in his closely held restaurants in the amount of $467,000 for goods sold and services rendered to them by LA.

The bankruptcy trustee began proceedings to disallow Klass' secured claims. Klass and the trustee ultimately entered into a settlement agreement. Under the agreement, the trustee waived any challenge to Klass' status as a secured creditor. In exchange, Klass was awarded $30,000 and all of LA's real estate, valued at $100,000. Klass then sued the defendants for legal malpractice, alleging that as a direct and proximate result of defendants' negligence, Klass' advances to LA were partially unsecured.

In support of his claim, the plaintiff called several expert witnesses. Steven Harris, a professor of law at the University of Illinois, Terry Chapman, a bankruptcy trustee, and John Sherrick, an accountant, all testified on behalf of the plaintiff. Harris and Chapman both opined that if the defendants had properly prepared and filed the necessary documents, the plaintiff would have been treated as a secured creditor with priority status by the bankruptcy trustee. According to Sherrick, the plaintiff's bankruptcy claim would have been worth $426,099.55 as a secured creditor.

The defendants called two attorneys as expert witnesses, William Christison and Andrew Covey. They opined that even if the defendants had filed the proper documents, a Federal bankruptcy court would not have treated the plaintiff's claim as secured. According to Christison and Covey, the doctrine of equitable subordination (11 U.S.C. §502(a) (1988)) allows a bankruptcy court to employ principles of equity in determining whether the claim of an insider is secured. The purpose of this doctrine is to prevent insiders from converting their equity into secured debt in anticipation of bankruptcy. (*Kham &*

*Nate's Shoes No. 2, Inc. v. First Bank* (7th Cir. 1990), 908 F.2d 1351, 1356.) They opined that a Federal bankruptcy court would have employed this doctrine to prevent the plaintiff from acting as a secured creditor.

The trial court found in favor of the plaintiff. The court ruled that if the defendants had not been negligent, the plaintiff's claim in bankruptcy would have been worth $426,099.55. The court further found that Klass was paid $101,100 in salary, which constituted a disallowable preference. Due to a slight mathematical error, the court ruled this reduced the claim to $325,999.55. In fact, the figure should have been $324,999.55.

The court then equitably subordinated $99,800 of the claim. The court ruled that equitable subordination is not an all or nothing proposition. The court found that it could properly subordinate part but not all of the claim. This position is supported in the Federal cases of *In re De Feo Fruit Co.* (W.D. Mo. 1982), 24 Bankr. 220, and *In re Delta Smelting & Refining Alaska, Inc.* (Alaska 1985), 53 Bankr. 877. The court ruled that the plaintiff engaged in inequitable conduct by selling $99,800 worth of meat and other inventory to his current subsidiary corporations which ultimately went unpaid. This reduced Klass' claim to $225,199.55. The trial court added $47,501 to the claim for interest. Then the court deducted $130,000 for the funds Klass received in the bankruptcy settlement. The ultimate judgment was rendered in the amount of $142,991.55. The figure should have been $141,991.55.

Although the plaintiff and the defendants have posed the question in several ways, the true issue on appeal is whether the trial court's award of damages was manifestly erroneous.

The trial court in this case was required to act as a hypothetical bankruptcy court. The trial court was placed in the difficult and unenviable position of having to apply Federal bankruptcy law to the facts of the case as if they had actually been presented to a United States Bankruptcy Court judge.

■ Fixing the amount of damages is preeminently the function of the fact finder, and its determination will not be disturbed on appeal unless it is manifestly erroneous. (*King v. City of Chicago* (1978), 66 Ill. App. 3d 356, 384 N.E.2d 22; *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 321 N.E.2d 1.) Even where the reviewing court would be better satisfied with different findings as to damages, it will not interfere with the trial court's award where the evidence is conflicting or where there is evidence in support of the verdict and there is no indication that the award was the result of passion, prejudice or corruption. *Pioneer Trust & Savings Bank v. Zonta* (1981), 96 Ill. App. 3d

339, 421 N.E.2d 239; *Landolt v. Stratmann* (1967), 87 Ill. App. 2d 81, 230 N.E.2d 498.

■■■ Nothing in the record suggested that passion, prejudice or corruption precipitated the trial court's award. In fact, the trial court's award was reflective of a balanced attempt to deal with a very unusual role which the court was required to play. The testimony of the plaintiff's expert witnesses conflicted with the testimony of the defendants' experts. The trial court, as the finder of fact, was in the best position to evaluate the testimony of the various expert witnesses. Where the testimony conflicted, it was within the province of the trial court to determine the credibility of the expert witnesses. (*Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 388 N.E.2d 844.) In the case at bar, the court decided the truth lay somewhere between the respective testimony of the parties' expert witnesses. The court obviously was of the opinion that a bankruptcy court would have subordinated part, but not all, of the plaintiff's claim. We cannot say, based on a review of this record, that the trial court acted in error. Nor can we say that the trial court's ruling was unsupported by the evidence.

Plaintiff cross-appealed and claimed that the trial court erred by deducting $84,500 of accrued salary as a preferential transfer. Plaintiff contended that while the books of LA showed the sum of $84,500 as accrued salary, in fact this money was never paid to Al Klass and should not have been deducted from his loan claim. At trial plaintiff testified that he did not take $84,500 from LA in salary on August 31, 1984. However, on cross-examination he admitted that he had testified in his discovery deposition that he recalled receiving "something to that effect." There were also entries on the books of the corporation which reflected expenses for salaries to Mr. Klass in the sum of $84,500 on August 31, 1984. The question of whether or not the money was actually paid to Klass was a disputed question of fact. The trial judge, as the trier of fact, was in the best position to evaluate the credibility of the witnesses and to consider all the testimony in the case. From the record before us, we cannot conclude that the court manifestly erred in its factual determination that the $84,500 had been paid to plaintiff.

Defendant further argues that an award of damages in this case is barred by *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, and its progeny. In *Moorman*, the Illinois Supreme Court held that recovery generally cannot be had in tort for what is termed purely economic loss. In *Collins v. Reynard* (1990), 195 Ill. App. 3d 1015, 553 N.E.2d 69, the fourth district ap-

plied the *Moorman* doctrine to a legal malpractice claim. The court ruled that Illinois law precludes the recovery of economic losses in tort cases, including legal malpractice, which are based on claims of negligence. The defendant urges this court to adopt the *Collins* view of economic losses occasioned by legal malpractice. We decline to do so.

In *2314 Lincoln Park West Condominium Association v. Mann, Gin, Ebel & Frazier, Ltd.* (1990), 136 Ill. 2d 302, 555 N.E.2d 346, the Illinois Supreme Court further explained the scope of its *Moorman* decision. In *Lincoln Park West*, the plaintiff sued the defendant, an architectural firm, for professional malpractice. The trial court certified, for purposes of permissive interlocutory appeal, a question concerning the availability of such a cause of action. (See 107 Ill. 2d R. 308.) The appellate court denied the defendant's application for review of the certified question. Pursuant to Supreme Court Rule 315(a) (107 Ill. 2d R. 315(a)), the Illinois Supreme Court allowed the defendant leave to appeal. The question certified was whether there should be an exception to the *Moorman* decision that would allow plaintiffs to recover in tort for purely economic losses resulting from architectural or engineering malpractice. The court answered this question in the negative.

The court ruled that the defeated expectations of a commercial bargain are more appropriately governed by contract law rather than by tort law. The court did not, however, signal an end to recovery in tort for all types of professional malpractice.

> "[W]e believe that other professional relationships are readily distinguishable from the present case. For example, since *Moorman*, malpractice actions against attorneys have gone forward, without any suggestion that the form of recovery traditionally recognized in such actions would no longer be allowed. [Citations.] Moreover, those cases recognize an extracontractual duty not only to the client but also to the group of persons the client intended to benefit. Such a duty arises from a consideration of the nature of the undertaking and the lawyer's traditional responsibilities. The same cannot be said with respect to the defendant architect in the present case." 136 Ill. 2d at 317-18.

The court in *Lincoln Park West* clearly indicated that legal malpractice claims are not akin to the types of commercial transactions to which the *Moorman* doctrine was meant to apply. *Lincoln Park West* recognizes that the nature and scope of the duties performed by the legal profession differ from other economic transactions. We,

therefore, decline to follow *Collins v. Reynard, infra.* To follow *Collins* and to apply the test of *Moorman* to lawyers' malpractice cases would do away with legal malpractice actions for all intents and purposes. While it may be possible for the mind of man to conjure up a situation where a lawyer's malpractice results in physical injury or damage to property, it is certainly very unusual. If we were to follow *Collins* and apply *Moorman* in this situation, we would be giving lawyers a free pass for all sorts of negligent conduct. It seems clear to us that the supreme court of this State did not intend that result. It also seems to us that our supreme court, in its *dicta* in *Lincoln Park West,* was making sure that the appellate courts of this State and the trial courts of this State understand that lawyers are not to be covered by the *Moorman* rule.

Because the decision of the trial court is not against the manifest weight of the evidence, and because we are of the opinion that the record amply supports the decision of the trial judge, we hereby affirm the decision of the circuit court of Peoria County as modified to reflect the correction of the mathematical mistake. The judgment in favor of the plaintiff, as modified, is in the amount of $141,991.55 plus costs.

Affirmed as modified.

GORMAN and SLATER, JJ., concur.