212 P.3d 125

## FLAGSTAFF AFFORDABLE HOUSING LIMITED PARTNERSHIP, an Iowa limited partnership, Plaintiff/Appellant,

v.

## DESIGN ALLIANCE INC., an Iowa corporation, Defendant/Appellee.

### No. 1 CA–CV 07–0743.

Court of Appeals of Arizona,
Division 1, Department E.

March 24, 2009.

As Amended April 20, 2009.

Tiffany & Bosco, PA By Robert A. Royal, Chad A. Hester, Elizabeth A. Corasiniti, Phoenix, Attorneys for Plaintiff/Appellant.

Renaud Cook Drury & Mesaros, PA By Denise J. Wachholz, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 In this appeal by plaintiff-appellant Flagstaff Affordable Housing Limited Part-

nership ("Owner"), we are asked to decide whether a lawsuit filed by a property owner against an architect, alleging professional negligence and seeking purely economic damages, is barred by the economic loss doctrine. For the reasons that follow, we conclude that this action is not barred by the economic loss doctrine. Because the trial court reached the opposite conclusion, we reverse its dismissal of the action and remand for additional proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On September 8, 1995, Owner entered into a contract with Design Alliance, Inc. ("Architect") for the design of the Mountainside Village Apartments (the "Apartments") in Flagstaff, Arizona. As an architectural firm licensed to perform professional architectural services, Architect designed the Apartments and provided Owner with plans, specifications, and drawings. Construction on the Apartments began in 1995 and was completed in 1996. Owner acknowledges that the Apartments were constructed in accordance with the architectural plans and specifications.

¶ 3 On August 26, 2004, the U.S. Department of Housing and Urban Development filed a complaint against Owner for housing discrimination, claiming that the design and construction of the Apartments violated the Fair Housing Design Construction requirements of 24 C.F.R. 100.205, which were in effect at the time of construction. Owner was forced to incur substantial expense to remedy the design deficiencies.

¶ 4 On April 7, 2006, Owner filed a complaint against Architect alleging breach of contract and professional negligence.[1] No personal injury or property damage had occurred, and Owner sought economic losses as compensatory damages. Architect filed a motion to dismiss the complaint pursuant to

Rule 12(b)(6), Arizona Rules of Civil Procedure, arguing that the statute of repose[2] barred the breach of contract claim and the economic loss doctrine precluded the professional negligence claim. In its response, Owner agreed to withdraw its breach of contract claim because of the statute of repose, but argued that the economic loss doctrine did not apply to professional negligence claims.

¶ 5 The trial court granted Architect's motion to dismiss, explaining in part as follows:

Plaintiff relies on *Donnelly Construction Company v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984) and *Smith v. [Arthur] Anderson [Andersen] L.L.P.*, 175 F.Supp.2d 1180 (D.Ariz.2001) for its argument that professional negligence claims between contracting parties are not barred by the economic loss rule.... Here, the parties were both parties to the contract and, therefore, *Donnelly's* reasoning and allowance of a claim based in negligence does not apply.

Judge Rosenblatt's ... decision in *Wojtunik v. Kealy*, 394 F.Supp.2d 1149 (D.Ariz. 2005) is more persuasive, even though it is based on a claim of negligent misrepresentation, not professional negligence....

Plaintiff attempts to distinguish its professional negligence claim from a claim of negligent misrepresentation and relies on the "special relationship between the parties" to support its position that a professional negligence claim is an exception to the economic loss rule. The Court is not so persuaded and finds that plaintiff's claim is barred.

¶ 6 Owner timely appeals, and we have jurisdiction in accordance with A.R.S. § 12–2101 (2003).

---

1. Butte Construction Company, which built the Apartments, was also named as a defendant. Butte Construction never answered the complaint and Owner's claims were subsequently dismissed against Butte due to lack of prosecution. Butte is not a party to this appeal.

2. Arizona Revised Statutes ("A.R.S.") section 12–552 (2003) provides, in pertinent part: "[N]o

action ... based in contract may be instituted or maintained against a person who ... performs or furnishes the design ... or construction ... of an improvement to real property more than eight years after substantial completion of the improvement to real property." A.R.S. § 12–552(A).

## ANALYSIS

¶ 7 "In reviewing motions to dismiss for failure to state a claim, we assume that the allegations in the complaint are true and determine if the plaintiff is entitled to relief under any theory of law." *Sensing v. Harris*, 217 Ariz. 261, 262, ¶ 2, 172 P.3d 856, 857 (App.2007). Whether a claim of professional negligence against a design professional is barred by the economic loss doctrine is a question of law that we review de novo. *See Carstens v. City of Phoenix*, 206 Ariz. 123, 125, ¶ 8, 75 P.3d 1081, 1083 (App.2003).

¶ 8 Owner argues the trial court erred by relying on the economic loss doctrine to dismiss its professional negligence claim. Architect argues that this case is similar to a construction defect case and that the economic loss doctrine bars Owner's recovery in tort.

¶ 9 The economic loss doctrine precludes an aggrieved party from recovering economic damages in tort unless accompanied by physical harm—either in the form of personal injury or property damage. *Carstens*, 206 Ariz. at 125–26, ¶ 10, 75 P.3d at 1083–84. The doctrine is a creature of judicial origin, its purpose grounded in the judicial hallmarks of distinction and clarity. "The purpose of the 'economic loss rule' is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles." *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1235 (Wyo.1996). "The economic loss rule thus 'serves to distinguish between tort, or duty-based recovery, and contract, or promise-based recovery, and clarifies that economic losses cannot be recovered under a tort theory.'" *Carstens*, 206 Ariz. at 126, ¶ 10, 75 P.3d at 1084 (citation omitted).

¶ 10 In Arizona, the economic loss doctrine has been applied in two categories of disputes: construction defects and products liability. *See, e.g., Salt River Project v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984) (barring strict liability action in products liability context when only economic loss occurs), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 111 P.3d 1003 (2005); *Woodward v. Chirco Const. Co., Inc.*, 141 Ariz. 514, 687 P.2d 1269 (1984) (barring negligence claim for pure economic losses in construction defect context); *Carstens*, 206 Ariz. 123, 75 P.3d 1081 (same); *Colberg v. Rellinger*, 160 Ariz. 42, 43, 770 P.2d 346, 347 (App.1988) (same); *Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 445, 690 P.2d 158, 164 (App. 1984) (same).[3]

¶ 11 In the above Arizona cases, the alleged deficiencies constituted actual defects in the physical construction of the home or building, such as cracks in the foundation, flooring, and walls; improper and hazardous electrical wiring; and inadequate beam support. In contrast, this dispute is a professional negligence action arising from the alleged negligent *design* of the Apartments. This is neither a construction defect case nor a products liability case. The Apartments were constructed in complete conformity with the architectural plans and specifications. The alleged error is in the design embodied within the architectural plans and specifications. Prior Arizona appellate opinions applying the economic loss doctrine have not decided whether the doctrine should be applied in this context. Nor has our legislature undertaken to prescribe whether the economic loss doctrine can be applied to bar a claim for professional negligence. Therefore, we must resolve this issue of first impression in Arizona.

¶ 12 For the reasons that follow, we hold that the economic loss doctrine does not ap-

---

**3.** We recognize that federal courts applying Arizona law have not limited the application of the economic loss doctrine to construction defects and products liability cases. *See, e.g., Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 480–81 (9th Cir.1995) (determining that economic loss doctrine barred a claim for negligent misrepresentation, but noting that Arizona courts have not ruled on this issue); *Wojtunik v. Kealy*, 394 F.Supp.2d 1149 (D.Ariz.2005) (finding that negligent misrepresentation in securities fraud action was barred by economic loss doctrine). *But see Evans v. Singer*, 518 F.Supp.2d 1134, 1138–48 (D.Ariz.2007) (holding that claim against real estate agent for rendering negligent professional services was not barred by economic loss doctrine).

ply to this claim for professional negligence against a design professional.

¶ 13 Owner's claim against Architect for professional negligence is based in tort, not contract.[4] In relationships between professionals and their clients, "the law imposes special duties to all within the foreseeable range of harm as a matter of public policy, regardless of whether there is a contract, express or implied, and generally regardless of what its covenants may be." *Barmat v. John & Jane Doe Partners A–D,* 155 Ariz. 519, 522, 747 P.2d 1218, 1221 (1987). The relationship between Architect and Owner is one between a professional and client. Because of its status as a professional, the law imposes special duties upon Architect in its relationship with Owner.

As a matter of public policy, attorneys, accountants, and other professionals owe special duties to their clients, and breaches of those duties are generally recognized as torts. The essential nature of actions to recover for the breach of such duties is not one "arising out of contract," but rather one arising out of tort—breach of legal duties imposed by law.

*Barmat,* 155 Ariz. at 523, 747 P.2d at 1222.

¶ 14 Here, Owner alleges Architect negligently fell below the standard of care for architects by failing to design the apartments in accordance with the Fair Housing Act. If proven, this would amount to a tort claim for breach of duties imposed by law upon Architect: namely, to act with the ordinary skill, care, and diligence of other design professionals in the architectural field. *See Barmat,* 155 Ariz. at 521–23, 747 P.2d at 1220–22. Because Architect's professional duties arise independently of any contract, the purpose of the economic loss doctrine—maintaining a

distinction between tort and contract actions—is not implicated.[5]

¶ 15 Our supreme court has also explained that "[d]esign professionals have a duty to use ordinary skill, care, and diligence in rendering their professional services. When they are called upon to provide plans and specifications for a particular job, they must use their skill and care to provide plans and specifications which are sufficient and adequate." *Donnelly Constr. Company v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 187, 677 P.2d 1292, 1295 (1984) (citation omitted) (allowing negligence claim against architect by contractor for purely economic damages, despite lack of contractual privity), *rejected on other grounds by Gipson v. Kasey,* 214 Ariz. 141, 150 P.3d 228 (2007). If we were to limit actions against architects to solely breach of contract in the absence of personal injury or physical harm to property, we would be ignoring the origin of the duty to use ordinary skill, care, and diligence. Application of the economic loss doctrine in this context would have the effect of eroding this implied duty. We reject such an approach.

¶ 16 The definitions provided by our legislature for "architect" and "architectural practices" also support our conclusion that a claim for professional negligence against an architect arises in tort and is not barred by the economic loss doctrine. A.R.S. § 32–101(B)(2) (2008) defines an "architect" as one who, "by reason of knowledge of mathematical and physical sciences and the principles of architecture and architectural engineering acquired by professional education and practical experience, is qualified to engage in the *practice of architecture* as attested by registration as an architect." (Emphasis added.) Section 32–101(B)(4) defines "architectural practice" as "any *professional service* or

---

4. The complaint does not allege the contents of the contract between Owner and Architect, nor does the record contain the contract, nor has either party claimed that the contract specified the applicable standard of care. We do not reach any issue that may be presented in claims arising out of specific language in a contract.

5. Architect also cites *Westinghouse,* in support of its contention that the remedy sought by Owner arises out of contract, not tort. *Westinghouse,* however, involved an allegedly defective product.

The court in *Westinghouse* was seeking to provide guidance for trial courts in determining whether to afford a remedy in strict liability for a defective product or a remedy under the Uniform Commercial Code for a product that failed to perform as expected. *Id.* at 379–80, 694 P.2d at 209–10. In the instant case, there is no issue concerning a defective product or strict liability. The nature of Owner's claim is professional negligence and, as discussed above, such a claim finds its basis in tort.

creative work requiring architectural education, training and experience, and the application of . . . the principles of architecture and architectural engineering to *such professional services . . . .*" (Emphasis added.) Our legislature recognizes that becoming an architect and engaging in "architectural practice" requires special knowledge and skills not common to the layperson. This is consistent with our conclusion that the law implies a duty on the part of architects, independent of any contractual duties, to use reasonable care when performing architectural services. Our legislature also requires that architects be "of good moral character and repute." A.R.S. § 32–122(A)(1) (2008). By requiring architects to be not only professionally educated and skilled but also honest and trustworthy, our legislature recognized that laypeople must trust an architect's special skill and knowledge. Indeed, it is the absence of the special knowledge and skills in the layperson and the presence of such in the architect that underscores the importance of the architect's duty to use reasonable care in rendering his or her architectural services. Application of the economic loss doctrine to limit claims of professional design negligence would be inconsistent with the public policy established by these statutes.

¶ 17 It is also significant that the economic loss doctrine has not been applied to preclude actions against certain other professionals for purely economic damages. In Arizona, actions against attorneys and accountants are permitted for negligence in performing their professional services. *See, e.g., Glaze v. Larsen,* 207 Ariz. 26, 29, ¶¶ 12–13, 83 P.3d 26, 29 (2004) (discussing basic elements of attorney malpractice); *Sato v. Van Denburgh,* 123 Ariz. 225, 599 P.2d 181 (1979) (recognizing tort of professional negligence against accountant and applying two-year statute of limitations requirement applicable to tort claims). The nature of professional services rendered by attorneys and accountants is such that personal injury or property damage is rarely a consequence of the negligent performance of these services, yet we do not preclude recovery against these professionals on the basis of the economic loss doctrine. It would be illogical and unjustifiable to prevent recovery for purely economic losses against architects but allow analytically similar recoveries against attorneys and accountants.[6] Such an approach would impair the long-standing common law tort of professional negligence.

¶ 18 Similar concerns have been enunciated in other jurisdictions. In *Moransais v. Heathman,* 744 So.2d 973 (Fla.1999), the Supreme Court of Florida ruled that the economic loss doctrine does not bar a cause of action against a professional for negligence even though purely economic damages resulted. 744 So.2d at 983–84. The court recognized that the economic loss doctrine was originally intended to limit actions in the products liability domain. *Id.* at 983 (stating that application of the economic loss doctrine "should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis"). With this limitation in view, the court emphasized that the economic loss doctrine should not bar a well-established tort such as professional negligence. *Id.*

¶ 19 The court in *Robinson Redevelopment Co. v. Anderson,* 155 A.D.2d 755, 547 N.Y.S.2d 458 (1989), likewise rejected the application of the economic loss doctrine to a claim against an architect. 547 N.Y.S.2d at 460. In that case, the defendant argued that plaintiff's cause of action was based in contract, not tort. In rejecting this argument, the court determined that the architect owed a duty to the plaintiff that arose from their professional relationship. *Id.* Like *Moran-*

---

**6.** Other jurisdictions, in applying the economic loss doctrine to claims against architects but not attorneys, have attempted to distinguish these two professions. *See, e.g., Klass v. Winstein, Kavensky, Wallace & Doughty,* 219 Ill.App.3d 817, 161 Ill.Dec. 817, 579 N.E.2d 365, 369–70 (1991); *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.,* 28 P.3d 669, 682 n. 9 (Utah 2001). These cases tend to focus on the nature and scope of duties performed by attorneys as opposed to those of an architect. While we recognize that architects do not owe precisely the same duties that attorneys owe to their clients, the basic premises underlying the two actions are the same: a duty implied in law arising from the professional relationship, the breach of which often results in purely economic losses.

*sais,* the court in *Anderson* refused to apply the economic loss doctrine because to "hold otherwise would eliminate the availability of malpractice claims against professionals such as architects where the damages are essentially pecuniary in nature." *Id.*

¶ 20 In *Business Men's Assurance Co. of America v. Graham,* 891 S.W.2d 438 (Mo.Ct. App.1994), the Missouri Court of Appeals held that an architect "had a duty to provide professional architectural services in a manner consistent with the skill and competence of other members of its profession." 891 S.W.2d at 454. The court found that because this duty arose not out of contract, but in the architect's "common law duty to provide architectural services in a professional manner," the economic loss doctrine did not apply. *Id. See also Magnolia Const. Co., Inc. v. Miss. Gulf S. Eng'rs Inc.,* 518 So.2d 1194, 1202 (Miss.1988) ("Mississippi law imposes on design professionals (architects/engineers) the duty to 'exercise ordinary professional skill and diligence.' "); *E. Steel Constructors, Inc. v. City of Salem,* 209 W.Va. 392, 549 S.E.2d 266, 275 (2001) (allowing recovery of purely economic damages in a professional negligence action against a design professional).[7]

¶ 21 We recognize that some courts in other jurisdictions have applied the economic loss doctrine to bar professional negligence suits, reasoning that contract law provides the sole remedy for the failure of a product or service to perform as the parties expected. *See, e.g., City Express, Inc. v. Express Partners,* 87 Hawai'i 466, 959 P.2d 836, 839 (1998) (noting that economic damages are limited to contractual remedies in cases where a party is in privity of contract with a design professional); *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.,* 372 Ill.App.3d 89, 309 Ill.Dec. 865, 865 N.E.2d 228, 236 (2007) (discussing *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.,* 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346 (1990), and recognizing that a

party may not recover economic damages against an architect under a theory of negligent design); *SME Indus., Inc.,* 28 P.3d at 680–84. As discussed earlier, however, an architect's professional duty to act with ordinary skill, care, and diligence is implied by law and traditional contract remedies may be an inadequate redress for a breach of these duties.

¶ 22 Comparing the present case to *Woodward,* Architect emphasizes that Owner is seeking purely economic damages without personal injury or property damage. In *Woodward,* homeowners sued the builder of their house for negligence and breach of the implied warranty of workmanlike performance and habitability. *Woodward,* 141 Ariz. at 515, 687 P.2d at 1270. The court dismissed the negligence claim but held that a claim based on the implied warranty was contractual in nature and distinct from a tort claim based upon a builder's breach of a common law duty of care. *Id.* at 515–16, 687 P.2d at 1270–71. The court discussed the differences between contract and tort causes of action and found that a "purchaser of a home can seek to recover in contract for defects in the structure itself as such defects render the home less than the purchaser bargained for." *Id.* at 516, 687 P.2d at 1271. The purchaser can also "seek to recover in tort for injuries sustained due to the contractor's failure to construct the home as a reasonable contractor would." *Id.*

¶ 23 Architect contends that Owner is seeking "benefit of its bargain" damages and based on the analysis in *Woodward,* a tort claim for purely economic losses cannot stand because of the economic loss doctrine. We disagree. Architect is not faced with a construction defect claim, but instead a claim for failing to draft plans and specifications that complied with known federal regulations. Like other cases cited by Architect, *Woodward* addresses construction defect claims, not professional negligence claims. We de-

---

7. Other courts have concluded that the economic loss doctrine should not be applied in an action against a design professional because of the existence of a "special relationship" between the parties. *See, e.g., E. Steel Constructors, Inc.,* 549 S.E.2d at 275. We do not decide the issue presented on this basis. The proper focus, we believe, is on the implied-in-law duty that exists on the part of the architect to act with the ordinary skill, care, and diligence of architectural design professionals.

cline to read *Woodward* as broadly as Architect urges.

¶ 24 Architect seeks to distinguish *Donnelly* by asserting that the main issue *Donnelly* addressed was contractual privity and that such privity was normally required to recover economic losses. The *Donnelly* court, however, allowed the contractor to sue for economic losses in tort despite the lack of privity due to the special circumstance in which the contractor had to rely on the architect's defective plans to make his bid. 139 Ariz. at 187–88, 677 P.2d at 1295–96. According to Architect, therefore, a contract with an architect defeats any exception to the economic loss doctrine. In attempting to distinguish *Donnelly*, Architect cites two Arizona cases which discuss *Donnelly*.

¶ 25 Architect first cites *Hayden Business Center Condominiums Assoc. v. Pegasus Development Corp.*, 209 Ariz. 511, 105 P.3d 157 (App.2005), *disapproved on other grounds by Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Const., Inc.*, 218 Ariz. 574, 190 P.3d 733 (2008). The court in *Hayden* noted that *Donnelly* analyzed a contractor's claim against a design professional for negligence and did not address construction defects and claims of a subsequent purchaser against a contractor, which were at issue in *Hayden*. *Hayden*, 209 Ariz. at 515 n. 2, ¶ 22, 105 P.3d at 161. Here, Owner's claim is not a construction defect claim, nor is it a claim against a contractor. Thus, Architect's attempt to distinguish *Donnelly* by relying on *Hayden* is unpersuasive.

¶ 26 *Carstens* is the other case cited by Architect. In *Carstens*, the plaintiffs sued the City of Phoenix and three of its building inspectors, alleging that the inspectors were negligent because they failed to discover construction defects and code violations in the house the plaintiffs purchased. 206 Ariz. at 124–25, ¶¶ 1, 3–4, 75 P.3d at 1082–83. The trial court ruled that the City of Phoenix did not owe the plaintiffs a duty of care to protect them from the type of harm they suffered and that the economic loss rule precluded the negligence claim. *Id.* at ¶ 7, 75 P.3d 1081. We affirmed on the basis of the economic loss doctrine. *Id.* at ¶ 29.

¶ 27 In addressing *Donnelly*, the *Carstens* court noted that *Donnelly* did not involve a claim of negligent construction and there were no structural defects to remedy. *Carstens*, 206 Ariz. at 129, ¶ 27, 75 P.3d at 1087. "*Donnelly* recognized a professional's duties to a non-client where 'there was a foreseeable risk of harm to a foreseeable non-client whose protection depended on the actor's conduct' such that 'the contractor was in the care of the architect.'" *Id.* (quoting *Napier v. Bertram*, 191 Ariz. 238, 242, ¶ 16, 954 P.2d 1389, 1393 (1998)). The court in *Carstens* recognized that the *Donnelly* holding applied to "professionals" whose work product formed the basis of work for the contractor and that the City inspectors could not be considered professionals in the sense that architects are professionals. *Carstens*, 206 Ariz. at 129 n. 5, ¶ 27, 75 P.3d at 1087.

¶ 28 Although Owner is alleging purely economic damages, the claim at issue here is against the professional architect for design defects, not the contractor who constructed the property, nor property inspectors as addressed in *Carstens*. Unlike *Carstens*, this case alleges negligent design, not negligent construction. Furthermore, Architect owed a duty of care to Owner in rendering its professional services. *Carstens* is therefore distinguishable and not dispositive of the issue presented before this court. Accordingly, we find Architect's attempts to distinguish *Donnelly* unpersuasive.

¶ 29 Architect further argues that a decision in Owner's favor would eviscerate the statute of repose. The statute of repose, however, by its very words applies only to actions based in contract. *See* A.R.S. § 12–552. *See also Fry's Food Stores of Ariz., Inc. v. Mather & Assoc., Inc.*, 183 Ariz. 89, 91, 900 P.2d 1225, 1227 (App.1995). The language in the statute is inapplicable to negligence actions among contracting parties. *Fry's*, 183 Ariz. at 91–92, 900 P.2d at 1227–28. Because we are addressing a professional negligence action rather than a contract action, no violence is inflicted on the statute of repose by allowing a professional negligence claim to proceed despite the expiration of potential contract claims.

## CONCLUSION

¶ 30 Design professionals such as architects have a duty to use ordinary skill, care, and diligence in rendering their professional services, and this duty arises out of tort, not contract. The economic loss doctrine does not foreclose a cause of action for professional negligence against an architect, even though the claim seeks only economic damages. We reverse the judgment in favor of Architect and remand for additional proceedings consistent with this decision.[8]

CONCURRING: MARGARET H. DOWNIE, Judge and DONN KESSLER, Acting Presiding Judge.

---

8. In light of our decision, we need not address whether the trial court abused its discretion in denying Owner's motion for a new trial. Also, we emphasize that this decision is based on these facts. We have not addressed whether the economic loss doctrine is applicable to claims against other "professionals" or in other situations outside the context of construction defects or products liability.